IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 10-cv-593 (GMS) |
| ) | |
| MCAFEE, INC., SYMANTEC CORP., ) | |
| WEBROOT SOFTWARE, INC., WEBSENSE, ) | |
| INC., and SOPHOS, INC., ) | |
| ) | |
| Defendants. ) | |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NOs. 6,092,194 & 6,480,962

After having considered the submissions of the parties and hearing oral argument on the

matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted

claims of U.S. Patent Nos. 6,092,194 ("the '194 Patent") and 6,480,962 ("the '962 Patent"):

### A. The '194 Patent

1. The term "Downloadable" is construed to mean "an executable application program, which is

   downloaded from a source computer and run on the destination computer."[1]

---

[1] The court rejects the defendants' proposed construction of this term, which all parties agree is not amenable to plain and ordinary meaning. (D.I. 144 at 8-11; D.I. 145 at 5-10.) The defendants' proposed construction defining "Downloadable" as a "mobile code that is requested by an ongoing process and downloaded from a source computer to a destination computer for automatic execution," departs from the patent specification and injects ambiguity into the term. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005). In fact, the term "mobile code" itself is not included in the specification and is instead derived from the prosecution history. Specifically, the language of the defendants' construction was included in an October 17, 1999 Response to Office Action, wherein the patent applicant stated:

> Ji [U.S. Patent No. 5,623,600] teaches gateway detection of viruses attached to executable files, and does not teach hostile Downloadable detection. As is well known in the art, a Downloadable is a mobile code that is requested by an ongoing process, downloaded from a source computer to a destination computer for automatic execution. The programs or documents of Ji are not Downloadables.

(D.I. 184 at JA000249.) The defendants assert that the applicant used this definition to distinguish the invention from the Ji prior art and, therefore, the applicant disclaimed the plaintiff's current construction. (D.I. 145 at 6-7.)

2. The term "Downloadable security profile data pertaining to the Downloadable" is construed

    to have its plain and ordinary meaning.[2]

3. The term "a list of suspicious computer operations that may be attempted by the

    Downloadable" is construed to have its plain and ordinary meaning.[3]

---

In light of relevant precedent, however, the court disagrees. As the Federal Circuit has made clear, "the specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Here, the plaintiff's proposed construction is derived directly from the '194 Patent's specification. *See* U.S. Patent No. 6,092,194 ("the '194 Patent"), at Col. 1, ll. 44-47. As this court concluded in *Finjan, Inc. v. Secure Computing Corp. et al* (06-cv-369), where it was asked to construe the same term, the court declines to substitute the '194 Patent specification's explicit definition with a conflicting portion of the '194 Patent's prosecution history. (06-cv-369; D.I. 142 at 2.) Rather, the court concludes that where, as here, the patent applicant intended to act as the lexicographer of this term, the specification definition controls. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998); *see also 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1374 (Fed. Cir. 2003) (concluding that "the definition in the specification controls").

[2] The court rejects the defendants' proposed construction of this term, which it defines as meaning "data that was decomposed from the code for the received Downloadable." (D.I. 145 at 16-18; D.I. 183 at 18-20.) The defendants assert that plain and ordinary meaning is insufficient here because, per the specification, "an incoming Downloadable is decomposed into DSP data, unless it has previously been decomposed." (D.I. 183 at 18.) To this end, the defendants argue, "decomposed" should be included in the definition of this term as it is the "only method of deriving DSP data" that is "described in the specification," specifically in Figures 6A and 7. (Id.) Conversely, the plaintiff argues that the defendants' inclusion of the words "data decomposed from the code" is inappropriate because there "are no limitations placed on how the Downloadable security profile is generated" and, in fact, the "claim language is silent" with respect to how the Downloadable security profile data pertaining to the Downloadable is generated. (D.I. 144 at 12.) Moreover, the plaintiff asserts that the defendants' proposed construction explicitly reads in a limitation from two dependent claims into the independent claims and, in so doing, violates the doctrine of claim differentiation. (Id.)

The court agrees with the plaintiff that the plain and ordinary meaning of this term is sufficient. Specifically, and as the plaintiff notes in its Opening and Answering Briefs, the defendants' proposed construction fails because: (1) it seeks to add limitations from dependent claims into independent claims, violating the claim differentiation doctrine; and (2) it requires the generation of Downloadable security profile data, when the independent claims require only comparison between the Downloadable security profile and the security policy. With regard to the latter, the Downloadable security profile data does not need to be generated for this comparison to occur, as it may be "pre-stored and retrieved from a database." *See* '194 Patent, Col. 5, ll. 38-41 ("[I]f the DSP data 310 of the received Downloadable is known, the code scanner 325 retrieves and forwards the information to the ACL comparator 330"); *see also id.* at Col. 6, ll. 6-10 ("for improved speed but reduced security, the code scanner 325 may examine only a portion of the Downloadable such as the Downloadable header"). Thus, in consideration of the foregoing and the relevant law, the court concludes that inclusion of "decomposed" in the construction of this term would improperly narrow its scope. *See Adams Respiratory Therapeutics, Inc. v. Perrigo, Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (concluding that it is improper to exclude embodiments disclosed in the specification where the patentee did not explicitly disclaim these embodiments in the intrinsic record); *Liebel-Flarsheim Co.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (stating that, where independent claims lack reference to a limitation in dependent claims, this absence provides strong support that all claims are not intended to include the limitation); *see also Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

[3] The court rejects the defendants assertion that this term should be construed to mean "a list of all operations that may be attempted by the received Downloadable that have been determined to be suspicious." (D.I.

**B. The '962 Patent**

1. The term "Downloadable" is construed to mean "an executable application program, which is downloaded from a source computer and run on the destination computer."[4]

2. The term "information pertaining to the Downloadable" is construed to have its plain and ordinary meaning.[5]

---

145 at 16-20.) The defendants' proposed construction mirrors the term language, except that it requires the "list of suspicious computer operations that may be attempted by the Downloadable" to recite "all" such suspicious computer operations. The defendants derive this construction from: (1) an embodiment in the '194 Patent stating that "the particular Downloadable security profile data 301 includes 'the list of all potentially hostile or suspicious computer operations that may be attempted by a specific Downloadable 307'"; and (2) the '194 Patent applicant's use of this specific embodiment to overcome the prior art, specifically, U.S. Patent Nos. 5,692,047 and 5,864,683. (D.I. 183 at 16-17.)

The court, however, disagrees with the assertion that the patent applicant disavowed the plain and ordinary meaning of this term through its patent specification and prosecution history to distinguish it from the prior art. First, and as the defendants acknowledge in their Opening and Answering Briefs, the inclusion of the word "all" in this term's language is an embodiment and, therefore, is not dispositive in construing the term's meaning. *See Comarck Communications v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("while . . . claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims" (internal citation omitted)). Second, the defendants' contention that the patent examiner approved the '194 Patent because of the applicant's reliance on this embodiment, is not entirely accurate and imports a limitation from the prosecution history into the meaning of this claim term. Specifically, while the defendants are correct that the patent applicant amended claims related to the Downloadable security profile, it is not clear that the examiner approved the '194 Patent because the applicant included the word "all". Rather, the patent examiner stated, in the Notice of Allowability, that "the Examiner found it novel in the art to compare downloadable security profile data pertaining to a downloadable that which the downloadable security profile data includes a list of suspicious computer operations that may be attempted by the downloadable." (D.I. 144 at 13 (quoting '194 Patent File History, Notice of Allowability, JA 000255-56).) Consequently, the court concludes that the inclusion of "all" in the construction of this term would improperly limit its scope and would be inappropriate under relevant law. *See Phillips*, 415 F.3d at 1315 (Fed. Cir. 2005) (concluding that claim construction should be consistent with a patent's specification and noting that "the inventor's intention, as expressed in the specification, is dispositive" (citing *Vitronics Corp.*, 90 F.3d at 1582)); *id.* at 1315-16 (concluding that, although the prosecution history is a part of the intrinsic record, it is generally less reliable for purposes of claim construction than the specification and claims because the prosecution history reflects a "negotiation history" rather than the result of that negotiation); *Comarck Commc'ns*, 156 F.3d at 1186 ("while . . . claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims" (citations omitted)).

[4] The court agrees with the parties' contention that "Downloadable" should be construed to have the same meaning in the '194 and '962 Patents. (D.I. 144 at 8-11; D.I. 145 at 5-10.) The court also notes that the definition of "Downloadable" in the '962 Patent is also included in that Patent's specification and provides the same definition as the construction adopted in this Order. *See* U.S. Patent No. 6,480,962 ("the '962 Patent), at Col. 1., ll. 39-41. For a discussion of the court's reasoning in connection with the construction of this term, *see supra* note 1.

[5] The court disagrees with the defendants' proposed construction that "information pertaining to the Downloadable" should be construed to mean "information that is sufficient to identify the requesting Downloadable." "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314 (internal citations omitted).

3

3. The term "Downloadable engine" is construed to mean "software for managing and executing received Downloadables."[6]

4. The term "operating system probe" is construed to mean "interface for receiving and recognizing requests before allowing the operating system to execute the requests."[7]

Dated: February 29, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

---

The court further concludes that the defendants' proposed construction would serve to unjustifiably narrow the term's broad scope, which is not explicitly limited by the specification. *Id.* at 1316. In support of their construction, the defendants contend that the plaintiff, during reexamination of the '962 Patent's parent, U.S. Patent No. 6,167,520 ("the '520"), narrowed the meaning of this term by stating that "the broadest reasonable interpretation of this claim element would require at the very least 'information pertaining to the Downloadable' include information sufficient to identify the requesting downloadable." (D.I. 145 at 11 (citing '520 Patent Reexam, April 19, 2010, Appeal Brief).) As the plaintiff correctly notes, however, the quotation on which the defendants rely from the '520 Patent reexamination should not be viewed in isolation. Rather, during the '520 reexamination, the applicant stated in its November 10, 2010 Reply Brief that "[i]nformation that is sufficient to identify the requesting Downloadable is any information that is associated with the requesting Downloadable." (D.I. 182 at 13 (citing '520 Patent Reexam, November 10, 2010, Reply Brief at 9).) Notably, the defendants do not cite to the '962 Patent's prosecution history to support their construction and the '962 Patent specification does not discuss the identity of the Downloadable. *See Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). Consequently, the court concludes that the defendants' construction would inappropriately limit the scope of and inject ambiguity into the term. *See Phillips*, 415 F.3d at 1315 ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of the disputed term.'" (citation omitted)).

[6] During the *Markman* hearing, the parties agreed on this construction of the term. *See* Transcript of Hearing, dated January 30, 2012 ("Tr.") at 25:10-25; 26:1-7.

[7] During the *Markman* hearing, the parties agreed on this construction of the term. *See* Tr. at 27:15-25; 28:1-3.