## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FINJAN, INC.,                              )
                                           )
                                           )
Plaintiff,                                 )        Civil Action No. 10-593-GMS
                                           )
v.                                         )
                                           )
SYMANTEC CORP., WEBSENSE, INC., and        )
SOPHOS, INC.,                              )        JURY TRIAL DEMANDED
                                           )
Defendants.                                )
                                           )

## **FINAL JURY INSTRUCTIONS**

December 19, 2012

# TABLE OF CONTENTS

**Page**

1. GENERAL INSTRUCTIONS ................................................................................ 3

    1.1. INTRODUCTION ........................................................................... 3
    1.2. JUROR'S DUTIES ......................................................................... 4
    1.3. EVIDENCE DEFINED ................................................................... 5
    1.4. DIRECT AND CIRCUMSTANTIAL EVIDENCE ....................... 7
    1.5. CONSIDERATION OF EVIDENCE ............................................ 8
    1.6. STATEMENTS OF COUNSEL .................................................... 9
    1.7. CREDIBILITY OF WITNESSES ............................................... 10
    1.8. EXPERT TESTIMONY ............................................................... 11
    1.9. DEPOSITIONS AS SUBSTANTIVE EVIDENCE ..................... 12
    1.10. NUMBER OF WITNESSES ....................................................... 13
    1.11. BURDENS OF PROOF ............................................................... 14

2. THE PARTIES AND THEIR CONTENTIONS ............................................... 16

    2.1. THE PARTIES ............................................................................. 17
    2.2. FINJAN'S CONTENTIONS ........................................................ 18
    2.3. DEFENDANTS' CONTENTIONS .............................................. 21
    2.4. SUMMARY OF PATENT ISSUES ............................................ 22

3. PATENT INFRINGEMENT ............................................................................. 23

    3.1. PATENT INFRINGEMENT— GENERALLY ........................... 23
    3.2. PATENT CLAIMS ...................................................................... 25
    3.3. CLAIM CONSTRUCTION FOR THE CASE ............................ 26
    3.4. INDEPENDENT AND DEPENDENT CLAIMS ........................ 27
    3.5. OPEN ENDED OR "COMPRISING" CLAIMS ........................ 28
    3.6. INFRINGEMENT DETERMINATION ...................................... 29
    3.7. INFRINGEMENT DESPITE DEFENDANT'S
           IMPROVEMENTS OR PATENTS ON IMPROVEMENTS ............ 31
    3.8. WILLFUL INFRINGEMENT ..................................................... 32

4. INVALIDITY ................................................................................................... 34

    4.1. INVALIDITY — GENERALLY ................................................. 34
    4.2. PRIOR ART DEFINED ............................................................... 35
    4.3. ANTICIPATION ......................................................................... 36
    4.4. EFFECTIVE FILING DATE ....................................................... 38
    4.5. LEVEL OF ORDINARY SKILL ................................................ 39

## TABLE OF CONTENTS
Continued

Page

4.6.   OBVIOUSNESS...................................................................40
4.7.   SCOPE AND CONTENT OF THE PRIOR ART...............................43

5.   DAMAGES .........................................................................44

5.1   DAMAGES – GENERALLY ....................................................44

6.   STIPULATION ......................................................................48

7.   DELIBERATION AND VERDICT ................................................49

7.1.   DELIBERATION AND VERDICT................................................49
7.2.   DUTY TO DELIBERATE .........................................................51
7.3.   COURT HAS NO OPINION .....................................................52

# 1.    GENERAL INSTRUCTIONS

## 1.1.    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 1.2.   JUROR'S DUTIES

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide whether Finjan has proven it is more probable than not that the Defendants are liable for infringement, and also whether the Defendants have proven that it is highly probable that Finjan's asserted patent or patents are invalid. If you decide that a Defendant is liable for infringement and that the Defendants have not proven that Finjan's asserted patent or patents are invalid, then you must decide what damages, if any, Finjan is entitled to. Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## 1.3.  EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying at trial under oath, deposition transcript testimony that was presented to you, the exhibits that I allowed into evidence, the stipulations to which the lawyers agreed, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence. Certain charts, summaries and graphics have been used to illustrate testimony from witnesses. These charts, summaries and graphics are not themselves evidence, and only are as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown if I had allowed it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4.   DIRECT AND CIRCUMSTANTIAL EVIDENCE

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5.   CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6.   STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent, within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

## 1.7.   CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial. You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

## 1.8.   EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, the reliability of the information supporting the expert's opinions, the consistency of the expert's opinion with other evidence, testimony and common sense, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

**1.9.   DEPOSITIONS AS SUBSTANTIVE EVIDENCE**

During this trial, you have heard testimony from the playing of videotape excerpts or the reading of written excerpts from depositions.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness testified in person here in the courtroom.

## 1.10.  NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

## 1.11.  BURDENS OF PROOF

In any legal action, facts must be proved by a required weight of the evidence, known as the "burden of proof." In a civil case such as this, there are two different burdens of proof that are used. The first is called preponderance of the evidence. The second is called clear and convincing evidence.

In this case, Finjan asserts claims of patent infringement by the Defendants and seeks damages for this alleged infringement. Finjan has the burden of proving its claims of patent infringement and damages by a preponderance of the evidence. That means Finjan must produce evidence that, when considered in light of all the facts, leads you to believe that what Finjan claims is more likely true than not. To put it differently, if you were to put Finjan's and a particular Defendant's evidence on opposite sides of a scale, the evidence supporting Finjan's claims would have to make the scales tip somewhat on Finjan's side. Preponderance of the evidence, however, does not depend on the number of witnesses or amount of evidence that a particular party presents. Rather, it depends on the amount of weight that you attribute to the evidence presented to you.

Each Defendant also asserts that the patent or patents asserted against it are invalid. The Defendants have the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Finally, Finjan asserts claims for willful infringement against Websense, which Finjan must prove by clear and convincing evidence.

14

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## 2.   THE PARTIES AND THEIR CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

## 2.1.    THE PARTIES

As I previously told you, the Plaintiff in this case is Finjan.  The Defendants in this case are Symantec, Sophos and Websense.

Finjan is the owner of United States Patents Nos. 6,092,194 and 6,480,962.  I will refer to these patents as the "asserted patents," the "Patents-In-Suit" or by their last three numbers, as "the '194 Patent" and "the '962 Patent."

## 2.2.   FINJAN'S CONTENTIONS

Finjan's Claims Against Symantec

Finjan also contends that Symantec directly infringes the '194 and '962 Patents.

In particular, Finjan alleges that Symantec infringes claims 1-2, 32, 35-37, 58, and 65-66

of the '194 Patent by making, using, selling, and offering for sale the products that include the

Matrix technology.

Finjan further alleges that Symantec infringes claims 1, 5, 6, 12, 15, 33, 37, 38, 45, 52

and 55 of the '962 Patent by making, using, selling, and offering for sale the products that

include the COH or BASH technology, which is sometimes referred to commercially as

SONAR.

Finjan seeks damages for Symantec's infringement.

Finjan's Claims Against Sophos

Finjan also contends that Sophos directly infringes the '194 and '962 Patents.

In particular, Finjan alleges that Sophos infringes claims 1, 2, 32, 35-37, 58, 65 and 66 of

the '194 Patent by making, using, selling, and offering for sale the products that include the

Sophos Behavioral Genotype Protection technology.

Finjan further alleges that Sophos infringes claims 1, 5, 6, 12, 21, 33, 37, 38, 45 and 52 of

the '962 Patent by making, using, selling, and offering for sale the products that includes the

Host Intrusion Protection System (HIPS) Runtime technology.

Finjan seeks damages for Sophos' infringement.

Finjan's Claims Against Websense

Finjan also contends that Websense directly infringes the '194 Patent.

In particular, Finjan alleges that Websense infringes claims 1, 2, 32, 35-37, 58, 65 and 66 of the '194 Patent by making, using, selling, and offering for sale the products that include the Real-Time Security Scanner ("RTSS") technology.

Finjan contends that Websense's infringement is willful. Finjan seeks damages for Websense's infringement.

<u>Summary of Finjan's Infringement Claims Against Each Defendant</u>

I will refer to the claims that Finjan has accused any of the Defendants of infringing as the "asserted claims" and the products or methods accused of infringing as the "accused products or methods."

A chart summarizing each claim that each Defendant is accused of infringing will be included in your instructions at this point for your reference. Independent claims will be highlighted on the chart. I will explain what independent claims are momentarily.

### Claims Asserted Against Each Defendant[1]

|        | Symantec | Sophos | Websense |
|--------|----------|--------|----------|
| **'194 Patent** | | | |
| 1      | X | X | X |
| 2      | X | X | X |
| 32     | X | X | X |
| 35     | X | X | X |
| 36     | X | X | X |
| 37     | X | X | X |
| 58     | X | X | X |
| 65     | X | X | X |
| 66     | X | X | X |
| **'962 Patent** | | | |
| 1      | X | X | |
| 5      | X | X | |

---

[1] An "X" indicates that the claim to the left is asserted against the Defendant. Independent claims are shaded in grey (see Section 3.4 for more instruction regarding independent versus dependent claims).

|    | Symantec | Sophos | Websense |
|----|----------|--------|----------|
| 6  | X        | X      |          |
| 12 | X        | X      |          |
| 15 | X        |        |          |
| 21 |          | X      |          |
| 33 | X        | X      |          |
| 37 | X        | X      |          |
| 38 | X        | X      |          |
| 45 | X        | X      |          |
| 52 | X        | X      |          |
| 55 | X        |        |          |

## 2.3.   DEFENDANTS' CONTENTIONS

Each Defendant denies that it has infringed any of the patent claims asserted against it. Websense denies that any such infringement was willful.

Each Defendant further contends that the patent or patents asserted against it are invalid for various reasons.  I will instruct you later as to the ways in which patents may be invalid.

## 2.4.   SUMMARY OF PATENT ISSUES

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues, separately for each Defendant:

1.      Whether Finjan has proven by a preponderance of the evidence that the particular Defendant infringed one or more of the claims of the patent or patents asserted against that Defendant;

2.      Whether the Defendants have proven by clear and convincing evidence that one or more of the asserted claims is invalid;

3.      If you find that Websense has infringed one or more of the claims of the patent asserted against it, whether Finjan has proven by clear and convincing evidence that infringement was willful;

4.      If you find that any one of the claims asserted against a particular Defendant is infringed and valid, what amount of monetary damages Finjan has proven by a preponderance of the evidence from that Defendant.

22

### 3.    PATENT INFRINGEMENT

### 3.1.    PATENT INFRINGEMENT— GENERALLY

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now instruct you about the rules you must follow when deciding whether Finjan has proven that a Defendant infringed any asserted claim of the asserted patent or patents.

Patent law gives the owner of a valid patent the right to stop others from making, using, offering for sale and/or selling the invention covered by its patent claims within the United States during the life of the patent.  If any person does so without the patent owner's permission before the expiration of the patent, that person is said to infringe.  In this case, Finjan alleges that the accused products and methods infringe certain claims of the '194 and '962 patents.

It is your job to determine whether or not Finjan has proved that each Defendant has infringed one or more of the claims of the patent or patents asserted against it by a preponderance of the evidence.  Deciding whether a claim has been infringed is a two-step process.

First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court, and I have told you what the terms of the asserted claims mean as a matter of law.  I will repeat those meanings for you in a moment and provide you with further instruction regarding how to understand the claims.

In the second step, each claim asserted against a specific Defendant, as I have construed it, must be compared to that Defendant's accused products and methods to determine whether every element of that claim is found in the accused products and methods.  This element-by-

element comparison is your responsibility as the jury.  I will further instruct you on how to conduct that comparison after I instruct you next about the claims.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare each of the patent claims, as I have defined them, to each of the accused products, and determine whether or not there is infringement.  You should not compare Defendants' products with any specific example set out in the patents, or with any other actual product.  The only correct comparison is with the language of the claims themselves, as I have explained their meaning to you.

## 3.2.  PATENT CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The claims of a patent are the numbered paragraphs at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers. Thus, only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

There can be a number of claims in a patent, as there are here. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a method or product only where each and every one of the claim elements or limitations is present in that method or product.

### 3.3.    CLAIM CONSTRUCTION FOR THE CASE

As I have mentioned, it is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you again on the meaning of the claims in this case. You must use the meanings that I give you for these terms to make your decisions of whether a claim is infringed or invalid. You must accept my definition of these terms as correct. You must ignore any different definitions used by the witnesses or the attorneys.

I instruct you that the following claim terms have the following definitions that have been determined by me:

- "Downloadable" means "an executable application program, which is downloaded from a source computer and run on the destination computer."

- "Downloadable engine" means "software for managing and executing received Downloadables."

- "operating system probe" means "interface for receiving and recognizing requests before allowing the operating system to execute the requests."

For those words in the claims for which I have not provided you with a definition, you should apply their plain English meaning as understood by one of ordinary skill in the art at the time of the invention, namely as of the effective filing date of the patent application, in the context of the patent specification and prosecution history. I will provide you with further instruction regarding level of ordinary skill in the art later. As I noted when I first provided you with these constructions, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.

### 3.4.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 1, 32, 65 and 66 of the '194 Patent are independent claims. Claims 1, 12, 33, 52 and 55 of the '962 Patent are independent claims. The remainder of the asserted claims of the Patents-In-Suit are "dependent claims."

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on the other claim or claims. A dependent claim incorporates all of the requirements of the claim or claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and the claim or claims to which it refers. A product or method that meets all of the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

### 3.5.    OPEN ENDED OR "COMPRISING" CLAIMS

The beginning portions, or preambles, of many of the asserted claims use the word

"comprising." The word "comprising" means "including" or "containing." A claim that uses the

word "comprising" is not limited to the elements recited in the claim, but also covers methods or

systems having additional elements not recited in the claim. Thus, if you find that an accused

product or method includes all of the elements of the claim, the fact that the accused product or

method might include additional elements would not avoid infringement of the claim, so long as

the presence of the additional component or method steps does not negate an element of the

claim.

### 3.6.   INFRINGEMENT DETERMINATION

Now that I have instructed you regarding the claims of the Patents-In-Suit, I will next instruct you further on the rules you must follow when deciding whether Finjan has proven by a preponderance of the evidence that a Defendant infringes any of the asserted claims of the asserted patent or patents.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another claim. Also, infringement of only one claim of an asserted patent by a specific Defendant is sufficient for you to find that Defendant liable of infringement.

The Patents-In-Suit claim both systems and methods. Any person or business entity that has made, used, sold or offered for sale the patented systems or methods during the term of the patents, without the patent owner's permission, infringes the patents, so long as the patents are not found to be invalid.

To determine whether a Defendant infringes, you must compare that Defendant's accused products or methods with each and every element of each claim asserted against it to determine whether that Defendant's products or methods employ each and every element of one or more of those claims. If that Defendant's products or methods do not employ each and every element of an asserted claim, then that Defendant did not infringe that particular asserted claim. You must determine, separately for each asserted claim, whether or not there is infringement.

There is one exception to this rule. If you find that a Defendant did not infringe an asserted independent claim, then you must find that the Defendant did not infringe any dependent claim that refers to that independent claim. For example, if you find that a Defendant did not infringe claim 1 of the '194 Patent, which is independent, then you must find that

Defendant also did not infringe claims 2 or 5 of the '194 Patent, which are the asserted claims that are dependent on claim 1. On the other hand, if you find that a Defendant infringed claim1, you must then decide, separately, whether the Defendant infringed any of these dependent claims that are asserted against it.

Direct infringement of a method claim requires a showing that a Defendant has practiced every step of the claimed method. The sale of a product, without more, does not infringe a method claim.

You have heard testimony during the course of the trial regarding the doctrine of equivalents. However, the Court has addressed this issue and you do not need to make any determination about it. You are only being asked to determine whether the Defendants have directly infringed the asserted claims asserted against each Defendant.

Also, keep in mind that intent to infringe, actual knowledge of a patent, or knowledge that one is infringing a patent, are not part of a claim for patent infringement. In other words, someone can infringe a patent without knowing that what they are doing is an infringement of a patent. They also may infringe even though they believe in good faith that what they are doing is not an infringement of the patent. However, this intent element is different for purposes of deciding whether Websense's infringement is willful and the two should not be confused. I will instruct you on the issue of intent in a willful infringement context later.

You must make the determination of whether there is infringement separately and independently for each Defendant, i.e., Symantec, Sophos and Websense.

### 3.7.   INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS

You may find that a Defendant's accused products or methods represent an improvement over the invention defined in Finjan's patent claims, or that a Defendant obtained patents on its products or methods.  However, as long as Finjan proves by a preponderance of the evidence that Defendant's accused products or methods include all of the elements of at least one of Finjan's patent claims, then you may still find infringement even if there are any improvements made to a Defendant's product or method, so long as the presence of the additional component or method steps does not negate an element of the claim.

## 3.8.   WILLFUL INFRINGEMENT

In this case, Finjan alleges that Websense has committed willful infringement. If you

find by a preponderance of the evidence that Websense has infringed one or more claims of a

Patent-In-Suit, you must then decide whether or not Finjan has also established by clear and

convincing evidence that Websense infringed the patent or patents willfully, that is, with reckless

disregard. To demonstrate such reckless disregard, Finjan must satisfy a two-part test.

The first part of the test is objective. Finjan must persuade you that Websense acted

despite an objectively high likelihood that its making, use, offer for sale or sale of an accused

product resulted in infringement. The state of mind of Websense is not relevant to this inquiry.

Rather, the appropriate inquiry is whether, to a reasonable person with knowledge of the patent

or patents, a high likelihood existed that Websense infringed a valid patent prior to the litigation.

Legitimate or credible defenses to infringement, including invalidity and unenforceability of the

patents in suit, even if ultimately not successful, demonstrate a lack of recklessness. If you

conclude that the Websense's conduct was reckless, you then need to consider the second part of

the test.

The second part of the test is subjective and depends on the state of mind of Websense.

Finjan must persuade you that Websense knew, or it was so apparent that Websense should have

known, that its actions constituted an unjustifiably high risk of infringement of a valid patent.

In deciding whether Websense had this state of mind, you must consider the totality of

the circumstances. The totality of the circumstances comprises a number of factors, which

include, but are not limited to:

1.      Whether Websense acted in a manner consistent with the standards of

commerce for its industry;

32

2.      Whether Websense had a reasonable basis to believe that it did not infringe or had a reasonable defense to infringement;

3.      Whether Websense made a good faith effort to avoid infringing the asserted patent or patents, for example, by ceasing infringing activity or attempting to design around the asserted patent or patents;

4.      Whether Websense tried to cover up its infringement;

5.      Whether Websense intentionally copied aspects of Finjan products that are covered by the asserted patent; and

6.      Whether Websense obtained and followed the advice of a competent lawyer with regard to infringement, invalidity and/or unenforceability.

# 4.   INVALIDITY

## 4.1.   INVALIDITY — GENERALLY

Patent invalidity is a defense to patent infringement.  Nevertheless, it is you the jury that have the ultimate responsibility for deciding whether or not the claims of the asserted patent or patents are valid.

I will now instruct you on the rules you must follow in deciding whether or not the Defendants have proven that the asserted claims are invalid. To prove that any claim of a patent is invalid, the Defendants must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

## 4.2   PRIOR ART DEFINED

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and nonobvious in light of what came before.  That which came before is referred to as "prior art."  Prior art includes any of the following items received into evidence during trial:

1.    Any product or method that was publicly known or used by others in the United States before the effective filing date of the patent.

2.    A published patent application or issued United States patent filed by another in the United States before the effective filing date of the patent.

3.    Patents that issued more than one year before the effective filing date of the patent.

4.    Printed publications having a date more than one year before the effective filing date of the patent.

5.    Any product or method that was in public use, offered for sale, or on sale in the United States more than one year before the effective filing date of the patent.

6.    Any product or method that was created by another in the United States before the invention was made, and was not subsequently abandoned, suppressed or concealed.

**4.3    ANTICIPATION**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Defendants must prove with clear and convincing evidence that the claimed invention is not new. Anticipation must be determined on a claim-by-claim basis.

In this case, Defendants contend that the asserted claims are anticipated. For a claim to be invalid because it is not new, all of its requirements must be present in a single item of prior art, either stated or necessarily implied. You may not combine two or more items of prior art to find anticipation. The disclosure in the prior art does not have to be in the same words as the claim. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the field of computer science would have understood from his or her examination of the particular prior art.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art but also what inherently resulted from its practice. This is called "inherency." An inherent limitation is one that is necessarily present and not one that may be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.

If the references Defendants have asserted are prior art, Defendants must prove on a claim by claim basis that:

(1) more than one year before the filing date of the patent, a product or method of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States; and (2) ready for patenting.  There is no requirement that the public use or sale of a prior art product or device enable a person of ordinary skill to make and use the claimed invention, or

(2) the invention defined by that claim was described in a printed publication, anywhere in the world, more than a year before the effective filing date of the application for the asserted patent or patents.  A printed publication must have been maintained in some tangible form, such as printed pages, and must have been sufficiently accessible to persons interested in the subject matter of its contents.  The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art one year before the application for the patent was filed and you may consider evidence that sheds light on the knowledge such a person would have had.

## 4.4   EFFECTIVE FILING DATE

Some of the prior art categories that I listed for you require you to know the filing date of the patent in question. This filing date may also be referred to as the "effective filing date." This term is used because the filing date used for determining whether something is prior art is not always the actual date that the application for the patent in question was filed. Rather, patent applicants are often permitted to rely on the date that an earlier patent application was filed as the effective filing date.

Finjan filed a "provisional" patent application on November 8, 1996. In this case, the parties agree that the effective filing date of the '194 Patent is November 8, 1996 based on the filing of the provisional patent application. However, you must determine whether the asserted claims of the '962 Patent are sufficiently supported by the provisional patent application. Finjan contends that the asserted claims of the '962 Patent are entitled to the filing date of the provisional application, while Defendants contend that the asserted claims are not.

Finjan may rely on the filing date of the November 8, 1996 provisional application to establish the effective filing date if the application teaches one of ordinary skill in the art to make and use each and every element of the asserted claims of the '962 Patent and to do so without undue experimentation.

If you determine that Finjan has shown by a preponderance of the evidence that the effective filing date is November 8, 1996, then Defendants must prove by clear and convincing evidence that this is not the correct effective filing date.

38

**4.5     LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

Finjan contends that a person of ordinary skill in the art would have a bachelor's degree or higher in computer science and/or several years of experience in the computer industry. The Defendants contend that a person of ordinary skill in the art would have a bachelor's degree or the equivalent in computer science (or related academic fields) and three to four years of additional experience in the field of computer security, or equivalent work experience.

## 4.6   OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. Defendants may establish that a patent claim is invalid by showing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of computer security at the time the invention was made.

You must consider the following factors to determine whether Defendants have established that a claimed invention is obvious:

1) the scope and content of the prior art relied upon by Defendants;

2) the difference or differences, if any, between each asserted claim that the Defendants contend is obvious and the prior art;

3) the level of ordinary skill in the art at the time the inventions of the patent were made; and

4) additional considerations, if any, that indicate that the invention was obvious or not obvious.

I will explain each of the four factors in more detail in a moment.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. Accordingly, you must be careful not to determine obviousness using hindsight to reconstruct or piece together the invention; many true inventions can seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field of

computer security at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of computer security to combine the known elements in a way the claimed invention does, taking into account such factors as:

1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4) whether the prior art teaches away from combining elements in the claimed invention;

5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

6) whether the change resulted more from design incentives or other market forces.

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

Remember, in determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. A motivation

may be found implicitly in the prior art as a whole without being explicitly discussed or suggested in any individual piece of prior art.

In determining whether the claimed invention was obvious, you should consider each claim separately.

Additionally, you should consider certain factors that may indicate that the invention would or would not have been obvious, such as:

- whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

- whether the invention satisfied a long-felt need;

- whether others had tried and failed to make the invention;

- whether others invented the invention at roughly the same time;

- whether others sought or obtained licenses to the patent from the patent holder based on the merits of the claimed invention;

- whether others copied the claimed invention;

- whether there were changes or related technologies or market needs contemporaneous with the invention;

- whether the invention achieved unexpected results;

- whether others in the field praised the invention;

- whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention; and

- whether the inventor proceeded contrary to accepted wisdom in the field.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.

42

### 4.7 SCOPE AND CONTENT OF THE PRIOR ART

As I instructed you, in arriving at your decision on the issue of whether or not the claimed inventions of a Patent-In-Suit are obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventors faced. Prior art is reasonably pertinent if it is in the same field as the invention, or if, although in a different field from that of the inventor's endeavor, it logically would have presented itself as worthy of an inventor's attention in considering his problem because of the matter with which it deals. Scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look at in solving a particular problem.

As you do in considering Defendants' anticipation contentions, you must first determine whether the material or devices relied upon by Defendants are "prior art" when making an obviousness determination. If these materials or devices are the same as those relied on by Defendants in alleging anticipation, your determination should be the same here. Thus, if you previously found something qualified as "prior art" for anticipation purposes, it is likewise prior art for the obviousness determination.

You must then consider what the qualifying prior art would have taught to one skilled in the art at the time of the invention.

## 5.   DAMAGES

### 5.1.   DAMAGES – GENERALLY

I will now instruct you on damages.  If you find any claim of the '194 or '962 Patents to be valid and infringed by Symantec or Sophos, or any claim of the '194 Patent valid and infringed by Websense, you must decide the amount of the damages in the form of a reasonable royalty that you find Finjan has proven by a preponderance of the evidence as to each such defendant.

Patent law provides that in the case of infringement of a valid patent claim, the owner of the patent, Finjan, shall be awarded damages adequate to compensate it for all losses resulting from the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty can be a lump sum payment or based on applying a royalty rate to an appropriate royalty base.

A royalty base generally includes only revenue generated by the allegedly infringing component.  That is, where a patent creates only part of the value of a larger product, a patentee's damages are typically limited to the part of the value created by the patent.  Finjan has the burden of establishing that it is entitled to obtain damages based on both patented and unpatented components.  If you are choosing the royalty rate for measuring damages, you must first decide the appropriate royalty base for each defendant.

It is generally required that royalties be based on the smallest salable patent-practicing unit.  A patent owner may recover damages on unpatented components when they are normally sold with the patented components and both are part of a single assembly so as to make a single,

functional unit and function together in some manner so as to produce a desired end product or result.

To decide whether Finjan is entitled to obtain damages on both patented and unpatented components, you must determine whether the specific features covered by the '194 and/or '962 patent claims were the basis for customer demand for the entire accused product. If you do not find that the patented features are the basis for the customer demand for the entire accused product, then you must apportion out from the royalty base the value attributable to the patented feature, and award damages only on that apportioned royalty base.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and each Defendant taking place just before the infringement began for Symantec in 2001 and 2006, for Sophos in 2006, and Websense in 2008. You should also assume that both parties to the negotiation understood the patent to be valid and infringed and were willing to enter into a license. Some of the factors that you may consider in making your determination are:

- Any royalties received by the licensor for the licensing of the asserted patent or patents, proving or tending to prove an established royalty;

- The rates paid by the licensee to license other patents comparable to the asserted patent or patents;

- The nature and scope of the license, such as whether it is exclusive or nonexclusive, restricted or nonrestricted in terms of territory or customers;

- The licensor's policy of maintaining its patent monopoly by licensing the use of the invention only under special conditions designed to preserve the monopoly;

45

- The nature of the commercial relationship between the patent holder and the licensee, such as whether there were competitors or whether their relationship was that of an inventor and a promoter;

- The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of nonpatented items; and the extent of such derivative or "convoyed" sales;

- The duration of the patent and the term of the license;

- The established profitability of the product made under the patent, its commercial success, and its current popularity;

- The utility and advantages of the patented property over the old modes or devices, if any, that have been used for working out similar results;

- The nature of the patented invention, the character of the commercial embodiment as owned and produced by the licensor; and the benefits to those who have used the invention;

- The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

- The portion of the realizable profit that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

46

- The opinion testimony of qualified experts;

- The amount that the licensor and a licensee would have agreed upon at the time the infringement began if they had reasonably and voluntarily tried to reach an agreement;

- Or any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

## 6.     STIPULATION

Finjan and Websense have made a stipulation that you are to assume is a fact for your deliberations.  Websense stipulates that Websense had knowledge of the '194 Patent as of June 6, 2008.

### 7.    DELIBERATION AND VERDICT

### 7.1.    DELIBERATION AND VERDICT

That concludes the part of my instructions explaining the law that governs your deliberations over the patent issues in this case.  Now let me finish up by explaining some things about how to conduct your deliberations in the jury room.

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.  Your verdict must be unanimous.  I would offer the suggestion that at the outset you decide which one of you will serve as your foreperson.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

Now let me explain how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case.  Further, as I instructed you at the beginning of these proceedings, you may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the Internet, any Internet service, or any text or instant messaging service; or any Internet chat room, blog, or social networking website

such as Twitter, Facebook, My Space, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer.  The question or message will be given to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages are normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages.  Do not ever write down or tell anyone else how you stand on your votes.  For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be.  That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party.  You must decide the case yourselves based on the evidence presented, and as I have already said, your verdict in this case must be unanimous.

## 7.2. DUTY TO DELIBERATE

You are now free to talk about the case in the jury room. It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or just for the purpose of returning a verdict or to get the case over with. Remember at all times that you are not partisans. You are judges of the facts, not me. Your sole interest is to seek the truth from the evidence in this case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

### 7.3.    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.